**Rhonda Rena ROBINS, Individually and as next friend of Jackie Wayne Robins, Jr., A minor, and Jackie Wayne Robins, Sr., Appellants,**

v.

**The KROGER CO. and Direct Source International, Inc., Appellees.**

No. 01–96–01185–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 30, 1998.

---

Stephen F. Malouf, Dallas, for appellants.

Charles W. Seymore, Sugarland, Craig Muessig, Baytown, Evelyn T. Ailts, Houston, for appellees.

Before SCHNEIDER, C.J., and WILSON and NUCHIA, JJ.

## OPINION

WILSON, Justice.

Appellants, Rhonda Rene Robins, individually and as next friend of Jackie Wayne Robins, Jr, a minor, and Jackie Wayne Robins, Sr. (sometimes collectively referred to as the "Robins"), appeal a take-nothing summary judgment rendered in favor of appellees, The Kroger Co. ("Kroger") and Direct Source International, Inc. ("DSI"). We reverse in part, affirm in part, and remand in part.

### Factual and Procedural Background

On August 11, 1989, Jackie Wayne Robins, Jr., then three years old, set fire to a pile of clothes with a disposable cigarette lighter allegedly placed in the stream of commerce by Kroger and DSI. The clothes and the lighter were in a van outside his parent's home. As a result of the fire, Jackie Jr. suffered severe and lasting injuries.

Among others, Robins sued Kroger and DSI for (1) breach of express and implied warranties, (2) negligent design, manufacture, and marketing of the lighter, (3) negligence per se for failure to comply with consumer product safety standards, and (4) strict products liability alleging defects in the manufacturing, marketing, and design of the lighter. The primary basis for the Robins' claims was that the lighter did not include a child-proofing or child-resistant design or mechanism to eliminate or reduce the risk that a child such as Jackie Jr. could ignite the lighter.

Kroger and DSI filed identical motions for summary judgment arguing that in 1989 there was no duty on the manufacturer, distributor, or retailer to make lighters child-resistant because they were in a certain class of products intended for adult use and not otherwise defective. In their response to the motions for summary judgment, the Robins argued Texas law holds a distributor and/or retailer legally responsible for marketing a product not reasonably safe for the product's intended use and foreseeable misuse as designed. The trial court granted Kroger's and DSI's motions for summary judgment and the Robins now appeal.

### Points of Error

In four points of error the Robins argue:

1. the trial court erred in rendering summary judgment because Kroger and DSI have a duty to design their products to be reasonably safe for intended uses and foreseeable misuses;

2. the trial court erred in rendering summary judgment because a fact issue exists whether it was foreseeable that a child would injure himself while playing with a cigarette lighter;

3. the trial court erred in rendering summary judgment because Kroger's and DSI's motions for summary judgment did not set forth the grounds on which summary judgment was sought; and

4. the trial court erred in rendering summary judgment because fact issues exist on the following causes of action (1) negligence per se; (2) negligent manufacturing and marketing; (3) strict liability related to manufacturing and marketing defects; and (4) breach of express and implied warranties.

### Nonspecific Nature of Summary Judgment

The Robins sued Kroger and DSI for various tort-based causes of action as set out above. The trial court disposed of all causes of action asserted by the Robins finding Kroger and DSI owed the Robins no duty of care.[1] In point of error three, the Robins

---

1. Lack of duty was the only issue relied on by Kroger and DSI in their respective motions for

argue Kroger's and DSI's successful motions for summary judgment could not encompass causes of action pled by the Robins, but not specifically identified in the motions or judgment.

■ A summary judgment motion shall state the specific grounds upon which judgment was sought. TEX.R.CIV.P. 166a(c); *see also McConnell v Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). The prerequisite to all tort liability is the existence of a legally cognizable duty. *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex.1993). Kroger's and DSI's summary judgment motions adequately set out their ground for summary judgment—that they owed no duty to the Robins. This single ground, if applicable to all causes of action pled, was sufficient to dispose of all the Robins's causes of action.

We overrule point of error three.

In point of error four, the Robins argue that because Kroger and DSI did not submit proper motions for summary judgment, fact issues remain with respect to those causes of action not specifically addressed. Because we find the trial court's ruling on the summary judgment motions sought to encompass the whole of the Robins' claims and because the Robins did not otherwise separately brief nor cite any authority as to why the duty element decided by the trial judge was not common to all causes of action, we overrule point of error four in part and affirm the judgment regarding the following claims: (1) breach of express and implied warranties; (2) negligent design, manufacture, and marketing of the lighter; and (3) negligence per se for failure to comply with consumer product safety standards. As to the strict product liability causes of action, we will address those claims under our analysis of points of error one and two.

summary judgment. It would necessarily follow from the trial court's ruling, although not specifically stated in the judgment, that the "duty" found lacking between the parties was the only basis upon which the summary judgment could have been rendered.

### Strict Products Liability

In point of error one, the Robins argue the trial court erred in rendering summary judgment because Kroger and DSI have a duty to design their products to be reasonably safe for intended uses and foreseeable misuses. Additionally, in point of error two, the Robins argue that a fact issue exists whether it was foreseeable that a child would injure himself while playing with a cigarette lighter.

### Standard of Review

■ Parties moving for summary judgment have the burden of showing there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). Defendant-movants must present summary judgment proof establishing, as a matter of law, there are no genuine issues of material fact on at least one element of plaintiffs' multiple causes of action. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). If the defendants produce sufficient evidence to establish their right to summary judgment, the plaintiff must present evidence sufficient to raise a fact issue to avoid summary judgment. *Id.* On appeal, all evidence favorable to the nonmovants will be taken as true and every reasonable inference indulged in the nonmovants' favor. *Id.* We must affirm the judgment if any theory advanced by the movants in their motion is meritorious. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996).

### Discussion

■ A prerequisite to the imposition of tort liability is the existence of a legally cognizable duty. *Graff*, 858 S.W.2d at 919. Whether a duty exists is a question of law for the courts. *Firestone Steel Prod. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex.1996). We consider Kroger's and DSI's duty, if any, within the realm of strict products liability.[2]

2. We note that the facts of this case occurred in 1989, before the imposition of laws requiring child-proof disposable lighters. We do not consider the existence of current legislation to be relevant for any purpose in considering the presence or absence of a duty between these parties in 1989. *See Brown Forman Corp. v. Brune*, 893 S.W.2d 640, 644–45 (Tex.App.—Corpus Christi

■ Texas courts have adopted the theory of strict products liability expressed in section 402A of the Restatement (Second) of Torts. *See American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 426 (Tex.1997); *Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 381 (Tex.1995). Section 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

 (a) the seller is engaged in the business of selling such a product, and

 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

RESTATEMENT (SECOND) OF TORTS § 402A (1965). The rule applies to any person engaged in the business of selling products for use or consumption. *Barajas,* 927 S.W.2d at 613. The law of products liability does not guarantee that a product will be risk free, since most products have some risk associated with their use. *Caterpillar,* 911 S.W.2d at 381. Liability is imposed for products sold "in a defective condition unreasonably dangerous to the user or consumer." RESTATEMENT (SECOND) OF TORTS § 402A (1965); *Caterpillar,* 911 S.W.2d at 381–82. A product may be unreasonably dangerous because of a defect in manufacturing, marketing,[3] or design. *Grinnell,* 951 S.W.2d at 426. Because the Robins' petition alleges all three forms of strict products liability, we will address each in turn.

### Manufacturing Defect

■ Under Texas law, a plaintiff has a manufacturing defect claim when a finished product deviates, in terms of its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous. *Grinnell,* 951 S.W.2d at 434; *see also Sims v. Washex Mach. Corp.,* 932 S.W.2d 559, 562 (Tex.App.—Houston [1st

Dist.] 1995, no writ). The Robins have raised no fact issue with regard to a defective manufacturing process of the specific lighter that caused the accident. Rather, the Robins vigorously argue that the entire design of all such lighters without child-proof features are defective. We, therefore, overrule point of error one as to any allegation of manufacturing defect.

### Marketing Defect (Failure to Warn)

■ A defendant is liable if the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous. *Caterpillar,* 911 S.W.2d at 382. The existence of a duty to warn of dangers or instruct as to the proper use of a product is a question of law. *Grinnell,* 951 S.W.2d at 426. The determination of whether a manufacturer has a duty to warn is made when the product leaves the manufacturer. *General Motors Corp. v. Saenz,* 873 S.W.2d 353, 356 (Tex.1993). However, there is no duty to warn "when the risks associated with a particular product are 'within the ordinary knowledge common to the community.'" *Grinnell,* 951 S.W.2d at 426 (quoting *Joseph E. Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385, 388 (Tex.1991) (no duty to warn of dangers of excessive or prolonged use of alcohol)). As stated by the Texas Supreme Court, "the law of products liability does not require a manufacturer or distributor to warn of obvious risks." *Caterpillar,* 911 S.W.2d at 382. We perform an objective inquiry when determining if a risk is obvious. *Id.* at 383; *see also Sauder Custom Fabrication, Inc. v. Boyd.,* 967 S.W.2d 349, 349–50 (1998) (proper perspective in determining obviousness of a risk is that of the average user).

■ In her deposition, Jackie Jr.'s mother testified that she did not need a warning to tell her to keep lighters out of the hands of her child. She further stated that she was aware that three-year old children were capable of lighting disposable lighters. We

---

1994, writ denied) (addressing whether distillers had duty to warn against alcohol over consumption in 1983, five years before federal legislation mandated warning labels).

3. A defendant's failure to warn when the law requires adequate warnings is a type of marketing defect. *Caterpillar,* 911 S.W.2d at 382.

are, however, mindful of the difference between what is obvious to a three-year old compared to what is obvious to the ordinary user of disposable lighters. The average ordinary consumer of disposable lighters does not need a warning to be appraised of the dangers associated with fire produced from lighters. At the same time, those lacking the mental capability necessary to understand the dangers of fire caused by lighters, e.g. three-year olds, would not otherwise be able to comprehend warnings placed on the lighters. The absence of a warning label on this disposable lighter did not make the product unreasonably dangerous.

We conclude that as a matter of law, the danger associated with fire produced from a cigarette lighter is an obvious risk within the ordinary knowledge of the community.[4] Therefore, Kroger and DSI owed no duty to the Robins related to a marketing defect. We overrule point of error one as to any allegation of a marketing defect.

### Defective Design

■■■■ "The duty to design a safe product is 'an obligation imposed by law.' " *Grinnell*, 951 S.W.2d at 432 (quoting *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 789 (Tex.1967)). Whether a seller has breached this duty, that is, whether a product is unreasonably dangerous, is a question of fact for the jury. *Grinnell*, 951 S.W.2d at 432. A product is defectively designed when it complies with design specifications, but the design itself causes the product to remain unreasonably dangerous. *Sims v. Washex Mach. Corp.*, 932 S.W.2d 559, 562 (Tex.

App.—Houston [1st Dist.] 1995, no writ). A defendant may still be held strictly liable for design defects even though the risks are obvious and apparent. *Grinnell*, 951 S.W.2d at 432–33; *Turner v. General Motors Corp.*, 584 S.W.2d 844, 850 (Tex.1979). Determining whether a design is unreasonably dangerous requires balancing the utility of the product against the risks involved in its use. *Grinnell*, 951 S.W.2d at 433; *Caterpillar*, 911 S.W.2d at 382; *Boatland Inc. v.. Bailey*, 609 S.W.2d 743, 745–46 (Tex.1980). The objective is to hold manufacturers of products designed with excessive risks accountable, but at the same time, to protect manufactures of products that are "safe enough." David G. Owen, *Toward a Proper Test for Design Defectiveness: "Micro–Balancing" Costs and Benefits*, 75 Tex.L.Rev. 1661, 1665 (1997).

Kroger and DSI argue that in 1989 they did not have a duty to design lighters with child resistant features, therefore injuries caused by the lighters are not actionable under a theory of defective design. Primarily relying on a federal case from the Seventh Circuit Court of Appeals, Kroger and DSI contend that a manufacturer of a simple tool[5] owes no duty to protect against obvious dangers. *See Todd v. Societe Bic, S.A.*, 21 F.3d 1402 (7th Cir.1994). In *Todd*, plaintiffs brought suit against the lighter manufacturer after their four-year old daughter caused the death of their 22–month old daughter by setting her room on fire with a disposable lighter. *Id.* at 1404. Among other theories, the parents alleged the lighter was defectively designed because it was not child resis-

---

4. For other courts which have found that the danger of a fire from a disposable lighter to be open and obvious to the ordinary consumer, see e.g., *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir.1994); *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 814 (Ind.Ct.App.1995); *Adams v. Perry Furn. Co.*, 198 Mich.App. 1, 497 N.W.2d 514, 520 (1993).

5. Kroger and DSI assume without argument that the disposable lighter in question is a simple tool as understood under law. By assuming this fact, Kroger and DSI are able to use cases to support their position that construe the duties of parties relative to the use of simple tools. But is this assumption correct? Simple tools are generally understood to be things such as hammers, screwdrivers, crowbars, and the like; tools that are

incapable of being made any simpler or safer without disproportionate loss of utility. Here, the disposable lighter in question is, we think, better understood and considered as a simple machine, and not as a simple tool. It is the mechanical apparatus of the disposable lighter that makes it a machine rather than a simple tool. However simple the lighter may be to adults, it is the mechanical apparatus on the lighter that is the entire focus of the case. Notwithstanding the plethora of cases throughout the nation that assume a disposable lighter is a simple tool, we conclude that legal standards helpful in analyzing simple tool cases are of limited, if any, value in aiding our resolution of this case.

tant. *Id.* Because the Illinois Supreme Court had not addressed this precise issue, the Seventh Circuit was forced to interpret differing standards of strict products liability law as applied by the Illinois Courts of Appeals. Within the realm of liability for defective design, the court had to choose between the consumer-contemplation test,[6] which restricts liability, and the risk-utility test, which expands liability. *Id.* at 1412.

The Seventh Circuit ultimately chose the more restrictive consumer-contemplation test, holding that the "Illinois Supreme Court would not apply the risk-utility test to a simple but obviously dangerous product." *Id.* Based on this interpretation of section 402A, the court affirmed the trial court's summary judgment determination that the lighter was obviously dangerous, but not unreasonably dangerous, without reference to the risk-utility test. *Id.* Kroger and DSI suggest we apply the consumer-contemplation test in deciding the question of duty and hold that a manufacturer of a simple tool has no duty to protect against dangers obvious to all. Such a result, however, would be contrary to Texas jurisprudence.

Although no Texas court has directly addressed whether the risk-utility doctrine should be applied in a design defect case involving a lighter and a child, we believe the Texas Supreme Court's recent decision in *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420 (Tex.1997), is instructive on this issue.

In *Grinnell*, a summary judgment case, the survivors of a smoker who died from lung cancer sued the cigarette manufacturer, American Tobacco Co, Inc. in part for strict products liability. *Id.* at 425. The plaintiffs alleged that cigarettes are both defective and unreasonably dangerous under section 402A. *Id.* Specifically, the plaintiffs asserted that the cigarettes were (1) defectively designed because ingredients found in cigarettes cause cancer, addiction, and disease, (2) defectively marketed, because the cigarette packages contain inadequate warnings, and (3) defectively manufactured because the cigarettes contain pesticide residue. *Id.*

In regards to the design defect claim, American Tobacco argued that the common-knowledge defense barred the plaintiffs' design defect claim as a matter of law. *Id.* at 432. The court, however, stated that American Tobacco's "attempt to invoke the common-knowledge defense is actually an attempt to invoke the 'open and obvious defense' or 'patent danger rule,' which this Court has rejected in design defect cases." *Id.* The Court, further stated:

> A number of courts are of the view that obvious risks are not design defects which must be remedied. *See, e.g., Gray [v. Manitowoc Co., Inc.]*, 771 F.2d [866], at 870 [(5th Cir.)]* (applying Mississippi law); *Delvaux v. Ford Motor Co.*, 764 F.2d 469, 474 (7th Cir.1985) (applying Wisconsin law); *Young v. Tide Craft, Inc.*, 270 S.C. 453, 242 S.E.2d 671, 680 (1978). However, our Court has held that liability for a design defect may attach even if the defect is apparent. *Turner*, 584 S.W.2d at 850. *Determining if a design is unreasonably dangerous requires balancing the utility of the product against the risks involved in its use. id.* at 847 & n. 1.

*Grinnell*, 951 S.W.2d at 432–33 (quoting *Caterpillar, Inc.*, 911 S.W.2d at 383–84) (emphasis added). The court concluded that American Tobacco's attempt to invoke the common-knowledge defense in the context of an alleged design defect was without merit. *Grinnell*, 951 S.W.2d at 433.

In the alternative, American Tobacco argued that it was entitled to summary judgment because no safer alternative cigarette design exists. The court agreed, holding the

---

**6.** Based on one interpretation of section 402A, under the consumer-contemplation test, a product is defectively designed if it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it with the ordinary knowledge common to the community as to the product's characteristics. RESTATEMENT (SECOND) OF TORTS § 402A (1965); W. PAGE KEETON ET AL PROSSER AND KEETON ON THE LAW OF TORTS § 99, at 698 (5th ed.1984). However, Prosser and Keeton state that the consumer-contemplation test is inadequate for evaluating the dangerousness of the designs of products with open or obvious hazards. *Id.* The consumer-contemplation test can result in finding products non-defective that easily could have been designed safer without greater expense or effect on the benefits or functions to be served by the product. *Id.*

summary judgment was proper on all of the plaintiffs' design defect claims. The court stated:

> In *Turner*, we held that "the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive," was one factor for juries to consider when determining whether a product was defectively designed. We reaffirmed this holding in *Caterpillar, Inc. v. Shears* by stating that "if there are no safer alternatives, a product is not unreasonably dangerous as a matter of law." 911 S.W.2d at 384. Accordingly, if there is no safer alternative to the cigarette manufactured by American, then its cigarettes are not unreasonably dangerous as a matter of law.

*Grinnell,* 951 S.W.2d at 433.

The *Grinnell* decision signifies the Texas Supreme Court's continued reliance on the risk-utility analysis, even in the context of a simple product such as a cigarette. We therefore, decline to apply the consumer-contemplation test urged by Kroger and DSI, but instead apply the risk-utility test.

### Risk–Utility Analysis

Kroger and DSI argue that even if the risk-utility test is applied to the facts of this case, Kroger and DSI did not owe a duty to make the lighter child resistant. Kroger and DSI rely in part on *Caterpillar, Inc.,* which held that if there are no safer alternatives, a product is not unreasonably dangerous as a matter of law. *Caterpillar, Inc.,* 911 S.W.2d at 384.

 In a design defect case, applying the risk-utility analysis, evidence of the following factors is admissible:

1. the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use;
2. the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive;
3. the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its useful-

ness or significantly increasing its costs;

4. the user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and
5. the expectations of the ordinary consumer.

*Grinnell,* 951 S.W.2d at 432. Additionally in *Boatland, Inc. v.. Bailey,* 609 S.W.2d 743 (Tex.1980), the court stated:

> Because defectiveness of the product in question is determined in relation to safer alternatives, the fact that its risks could be diminished easily or cheaply may greatly influence the outcome of the case.

> Whether a product was defectively designed must be judged against the technological context existing at the time of its manufacture. Thus, when the plaintiff alleges that a product was defectively designed because it lacked a specific feature, attention may become focused on the feasibility of that feature—the capacity to provide the feature without greatly increasing the product's cost or impairing usefulness. This feasibility is a relative, not an absolute, concept; the more scientifically and economically feasible the alternative was, the more likely that a jury may find that the product was defectively designed. A plaintiff may advance the argument that a safer alternative was feasible with evidence that it was in actual use or was available at the time of manufacture. Feasibility may also be shown with evidence of the scientific and economic capacity to develop the safer alternative. Thus, evidence of the actual use of, or capacity to use, safer alternatives is relevant insofar as it depicts the available scientific knowledge and the practicalities of applying that knowledge to a product's design. ·

*Id.* at 746; *see also* Theodore S. Jankowski, *Focusing on Quality and Risk: The Central Role of Reasonable Alternatives in Evaluating Design and Warning Decisions,* 36 S.Tex.L.Rev. 283 (1995); David G. Owen,

*Toward a Proper Test for Design Defectiveness: "Micro–Balancing" Costs and Benefits,* 75 Tex.L.Rev. 1661 (1997).

### The Summary Judgment Evidence

■ In their response to Kroger's and DSI's motions for summary judgment, the Robins rely in part on information contained in the Federal Register. From 1980 through 1985, an estimated 750 persons were injured each year in residential fires started by children playing with lighters. Consumer Product Safety Commission, 53 Fed.Reg. 6833, 6836 (1988) (proposed March 3, 1988). These fires caused the death of 120 people each year. *Id.* The Consumer Product Safety Commission estimated that the annual cost of fires caused by children playing with lighters was between 300 and 375 million dollars. *Id.* For the years 1988 through 1990, the number of deaths caused annually by children playing with lighters had increased to 150, and the number of injuries had risen to 1,100. Safety Standard for Cigarette Lighters, 58 Fed.Reg. 37,557, 37564 (1993) (to be codified at 16 C.F.R. pt. 1210). The predominant age of the children causing these incidents was between three and four years old. Consumer Product Safety Commission, 53 Fed.Reg. 6833, 6834 (1988) (proposed March 3, 1988).

The Consumer Product Safety Commission estimated that between 80 and 105 deaths per year would be averted by the implementation of child-proof lighters. Not all casualties would be eliminated because numerous nonchild resistant lighters will remain in consumer circulation. Safety Standard for Cigarette Lighters, 58 Fed.Reg. 37,557, 37,564 (1993) (to be codified at 16 C.F.R. pt. 1210).

By reducing property damage and medical expenses, approximately $205–$270 million dollars will be saved by the implementation of child-proof disposable lighters. *Id.* Undoubtedly, manufacturers will incur costs to install child safety features. The Consumer Product Safety Commission estimated that the lighter manufacturing industry will incur initial costs approaching $50 million. *Id.* at 37,565. In 1993, the Commission estimated that manufacturers could expect a one to five percent increase in the production cost. *Id.* The Commission estimated that because most disposable lighters cost 15 to 25 cents to produce, the manufactures would likely see an increase in total per-unit cost at roughly 1 to 5 cents. *Id.*

The summary judgment evidence before the trial court also contained the expert report and affidavit of Dr. John O. Geremia, a mechanical engineer and an expert in fires associated with disposable lighters. Dr. Geremia conducted an examination of the lighter used in the accident and stated in his report that: "[T]he lighter is defective in design in that it has no child resistant feature whatsoever on the lighter."

The summary judgment evidence additionally shows that no manufacturer of disposable lighters incorporated child resistant features until 1992, three years after Jackie Jr.'s injury. Although no child resistant lighters were marketed until 1992, Geremia testified by affidavit that it was technologically possible to produce child proof lighters in 1989. Geremia further stated that manufacturers were aware that child resistant features had been established as early as 1972. In his opinion, these features were not implemented because of manufacturer resistance.

We conclude that Kroger and DSI have failed to prove as a matter of law that they did not owe a duty to Robins. Further, we conclude that a fact issue exists under the risk-utility analysis as to whether Kroger and DSI breached their duty to design a safe product, *i.e.,* one that is not unreasonably dangerous.

We sustain points of error one, two, and four only as to the Robins' allegation of defective design.

### Conclusion

We reverse the judgment in part, affirm the judgment in part, and remand the cause to the trial court below for further proceedings except as to the portion of the judgment we have affirmed.

Chief Justice SCHNEIDER concurring.

SCHNEIDER, Chief Justice, concurring.

I concur fully in the court's opinion and write separately to add a brief observation.

I would note that the court's analysis concerning design defect is also supported by the *Restatement (Third) of Torts: Products Liability*, which explicitly adopts a "risk-utility" test as the standard for determining the defectiveness of product designs. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2(b) (Proposed Final Draft 1997).