**Rhonda Rene ROBINS, Individually and as Next Friend of Jackie Wayne Robins, Jr., a Minor, and Jackie Wayne Robins, Sr., Appellants,**

v.

**The KROGER COMPANY, Appellee.**

No. 01–01–00181–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 6, 2002.

Stephen F. Malouf, The Law Offices of Stephen F. Malouf, Dallas, for appellants.

Evelyn Ailts Derrington, Phillips & Akers, P.C., Houston, for appellee.

Panel consists of Justices TAFT, WILSON, and PRICE.*

## OPINION

DAVIE L. WILSON, Justice (Retired).

Appellants, Rhonda Rene Robins, individually and as next friend of Jackie Wayne Robins, Jr., a minor, and Jackie Wayne Robins, Sr. (collectively referred to as "Robins"), appeal a take-nothing summary judgment rendered in favor of appellee, The Kroger Company. We reverse and remand.

### Facts and Procedural History

On August 11, 1989, Jackie Wayne Robins, Jr., then three years old, set fire to a

---

* Justice Davie L. Wilson, who retired on March 31, 2002, continues to sit by assignment for the disposition of this case, which was submitted June 11, 2001. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

pile of clothes in a van parked outside his home with a disposable cigarette lighter allegedly placed in the stream of commerce by Kroger. Jackie Jr. suffered severe and lasting injuries.

Among others, Robins sued Kroger for (1) breach of express and implied warranties, (2) negligent design, manufacture, and marketing of the lighter, (3) negligence per se for failing to comply with consumer product safety standards, and (4) strict products liability alleging defects in the manufacturing, marketing, and design of the lighter. The primary basis for Robins' claims was the lighter did not include a child-proof or child-resistant design or mechanism to eliminate or reduce the risk that a child, such as Jackie Jr., could ignite the lighter.

In 1996, the trial court granted Kroger's first motion for summary judgment on the basis that in 1989 the manufacturers, distributors, and/or retailers of lighters had no duty to make child-resistant lighters because lighters were in a certain class of products intended for adult use and not otherwise defective. We affirmed in part, but reversed and remanded to the trial court, holding a duty existed and a fact issue remained under the risk-utility analysis on Robins' design-defect claim. *Robins v. Kroger Co.*, 982 S.W.2d 156, 164 (Tex.App.-Houston [1st Dist.]), *denied,* 5 S.W.3d 221 (Tex.1999). The Texas Supreme Court denied Kroger's petition for discretionary review, but, in its per curiam opinion, it noted that whether a fact issue remained under the risk-utility analysis could not be determined on the record,

because Kroger's motion for summary judgment did not apply the risk-utility analysis to Robins' design-defect claims. *Kroger Co. v. Robins,* 5 S.W.3d 221, 221 (Tex.1999).

Upon remand, Kroger moved for summary judgment under the risk-utility analysis on Robins' design-defect claim. Specifically, Kroger argued it was entitled to judgment as a matter of law if any one of the following applies: (1) a product safely designed for its intended use could not be unreasonably dangerous, (2) a disposable cigarette lighter could not be unreasonably dangerous by design if the risks of its use by a minor child were known and obvious to its intended adult users, or (3) a disposable cigarette lighter could not be unreasonably dangerous by design if it met the expectations of the ordinary adult intended consumer.

## Discussion[1]

We review the appeal under the usual standards of review applicable to motions for summary judgment. *See Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995) (all evidence favorable to nonmovant taken as true and reasonable inferences indulged in nonmovant's favor); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985) (defendant-movant bears burden to show no genuine issue of material fact and entitlement to judgment as matter of law).

## I.

Since the first *Robins v. Kroger* appeal, the Texas Supreme Court answered a cer-

---

1. In three points of error, Robins argues the trial court erred in granting summary judgment because (1) a manufacturer's intention that its product be used only by adults does not insulate it from liability for harm caused by a child who gains access to the product since a manufacturer has a duty to design its products to be reasonably safe for intended uses and foreseeable misuses; (2) an adult's awareness of the dangers involved in allowing children access to lighters must be decided by applying the risk-utility analysis; and (3) Texas has rejected the consumer-expectation test as the standard for determining defect in favor of the risk-utility analysis which is usually a matter of law.

tified question for the United States Court of Appeals for the Fifth Circuit on point. The question presented was "whether a disposable butane lighter, intended only for adult use, can be found to be defectively designed if it does not have a child-resistant mechanism that would have prevented or substantially reduced the risk of injury from a child's foreseeable misuse of the lighter." *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 254 (Tex.1999). In the appeal before us, both parties argue *Hernandez* requires disposition in its favor.

The facts of the case in the Fifth Circuit involved a disposable butane lighter purchased by Rita Emeterio for use at her bar. *Id.* at 255. Even though childproof lighters were available for purchase, Emeterio purchased a lighter without a childproof mechanism. *Id.* Gloria Hernandez, Emeterio's adult daughter, took the lighter from the bar for her personal use. *Id.* Hernandez's five-year-old daughter took the lighter from her mother's purse on the top shelf of a bedroom closet and started a fire in the room, severely burning her two-year-old brother. *Id.*

Kroger suggests the facts in *Hernandez* are identical to those in this case; however, the cases differ in one important aspect. In *Hernandez,* a childproof lighter was available for purchase, and Emeterio chose not to buy it. *Id.* In the case before us, manufacturers of disposable lighters had not yet produced a childproof lighter, even though it was technologically possible.

■ To answer the certified question, the *Hernandez* court began by reaffirming Texas's use of the risk-utility analysis to determine whether a defectively designed product is unreasonably dangerous. *Id.* at 256. The risk-utility analysis involves consideration of several factors including the following:

(1) the utility of the product to the user and to the public as a whole weighed against the gravity and the likelihood of injury from its use,

(2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive,

(3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs,

(4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions, and

(5) the expectations of the ordinary consumer.

*Id.* (citing *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 432 (Tex.1997)).

In its motion for summary judgment, Kroger concedes a question of material fact exists under factors two and three of the analysis. Kroger's arguments focus specifically on factors four and five. Kroger urges us to hold it is entitled to judgment as a matter of law on the strength of either factor four or five standing alone. In *Hernandez,* the Texas Supreme Court addressed arguments similar to all of Kroger's assertions as to when factors four and five may be decided as a matter of law. *Hernandez,* 2 S.W.3d at 257.

■ First, *Hernandez* addressed the situation where the risk of injury from a child's misuse of a product is obvious to the product's intended adult users. *Id.* at 258. The court stated that the fact that adult users may be aware of an obvious danger is "an important consideration in determining whether the product is unrea-

sonably dangerous" and may be decisive in the risk-utility analysis, but "in and of itself is not an absolute bar ... to liability for a defective design." *Id.* Here, Kroger made the child misuse argument in its motion for summary judgment. This basis for summary judgment, standing alone, cannot be an absolute bar to recovery, but should be considered in the entirety of the risk-utility analysis. *See id.*

Second, *Hernandez* addressed the fact that the product was intended to be used only by adults. *Id.* at 258–59. The court stated manufacturers and sellers of products intended for adult use do not have to make the products "childproof merely because it is possible for children to cause harm ... and certain that some children will do so." *Id.* at 259. However, the court continued by stating the "risk that adults, for whose use the products were intended, will allow children to access them, resulting in harm, must be balanced against the products' utility to their intended users." *Id.* The court then directed the Fifth Circuit to apply the general principle for assessing a product's safety in the context of its intended use under the risk-utility analysis as in *Caterpillar Co. v. Shears*, 911 S.W.2d 379, 384 (Tex.1995). *Hernandez*, 2 S.W.3d at 259. Thus, Kroger's first basis for summary judgment here should not be considered, standing alone, but in the entirety of the risk-utility analysis. *See id.*

Last, *Hernandez* addressed measuring the utility of disposable lighters with reference to their intended adult users. *Id.* at 260. If the cigarette lighter's design meets consumer expectations, then this fact may be ultimately determinative. *Id.* at 261. However, the Texas Supreme Court stated it is only "ultimately determinative" as a matter of law if "reasonable minds cannot differ on the risk-utility analysis considerations." *Id.* Thus, this basis

for summary judgment should not be considered, standing alone, but in the entirety of the risk-utility analysis. *See id.*

**II.**

■ Having reviewed the Texas Supreme Court's decision in *Hernandez* and the relevant portions relied upon by Kroger in its motion for summary judgment, we analyze all five factors of the risk-utility test regarding Kroger's motion for summary judgment.

In their response to Kroger's motion for summary judgment, Robins relies, in part, on information contained in the Federal Register. From 1980 through 1985, an estimated 750 persons were injured and 120 people died each year in residential fires started by children playing with lighters. Consumer Product Safety Commission, 53 Fed.Reg. 6833 (1988) (proposed March 3, 1988). Estimated costs of these fires was between 300 and 375 million dollars. *Id.* In 1988 through 1990, the number of injuries caused annually by children playing with lighters increased to 1,100, and the number of deaths rose to 150. Safety Standards for Cigarette Lighters, 58 Fed.Reg. 37557, 37564 (1993) (to be codified at 16 C.F.R. pt. 1210). Children three to four years old caused most of the fires. Consumer Product Safety Commission, 53 Fed.Reg. 6833, 6834 (1988) (proposed March 3, 1988). Prior to 1989, a child under the age of five was burned to death every day by a fire started with a disposable lighter. *Id.*

An estimated 80 to 105 deaths per year would be avoided by the implementation of childproof lighters. Safety Standards for Cigarette Lighters, 58 Fed.Reg. 37557, 37564 (1993) (to be codified at 16 C.F.R. pt. 1210). Approximately 205–270 million dollars in potential damages would be saved by manufacturing childproof lighters. *Id.* Estimates of manufacturing costs

for initially producing childproof lighters approached 50 million dollars. *Id.* at 37565. In 1993, manufacturers were expected to see a one to five percent increase in production costs and a one to five cent increase in per-unit cost. *Id.*

The summary judgment evidence before the trial court also contained the expert report and affidavit of Dr. John O. Geremia, a mechanical engineer and an expert in fires associated with disposable lighters. Geremia examined the lighter in the case and reported it was "defective in design in that it had no child resistant feature whatsoever on the lighter." Geremia testified, by affidavit, it was technologically possible to produce childproof lighters in 1989. Geremia further stated manufacturers were aware child-resistant features were not implemented because of manufacturer resistance. In fact, child-resistant lighters were not marketed until 1992. In 1993, the United States Consumer Products Safety Commission (CPSC) ordered manufacturers to include child-resistant features in disposable lighters. 58 Fed.Reg. 37554, 37556. The CPSC determined that the gravity of the harm and the social value of including a child-resistant feature in the lighter should require manufacturers to include a child-resistant feature. *Id.*

Kroger argues Jackie Jr.'s parents were aware of the danger to unsupervised children playing with disposable lighters. Without any warnings or labels, Jackie Jr.'s parents knew the lighter could be dangerous. Jackie Jr.'s parents were also aware of the risk that Jackie Jr. might get the lighter, and they took precautions to keep him from getting it. As *Hernandez* acknowledged, parents are in a better position to guard against a child's use of the lighter than a manufacturer or seller. *Hernandez*, 2 S.W.3d at 262.

While the product was intended to be used only by adults, Kroger is not insulated from liability merely because a child gained access. *See id.* at 260. We consider this factor when we apply liability standards in the context of the intended users. *Id.* As directed by *Hernandez*, we apply the general principle that a product's safety must be assessed in the context of its intended use. *Id.* at 259. Lighters are intended to be used only by adults, but they can be made childproof. Making a lighter childproof does not prevent the lighter from being used by its intended users, adults. *See, e.g., Caterpillar Co.,* 911 S.W.2d at 384 (not required to design loader so that, to be safe in all situations, it becomes of no use at all in others). Kroger presents no arguments as to why an alternative childproof lighter would not effectively meet the needs of adult users and at the same time protect against the risk that a lighter might come into a child's hands. Kroger also presents no evidence concerning the utility of a lighter without a childproof mechanism.

Lastly, consumer preference impacts the analysis. *Id.* at 260. In *Hernandez*, the court considered the possibility that all non-childproof lighters should be eliminated in favor of producing only childproof lighters because both kinds of lighters were available in the market. *Id.* The court noted that, to make a product safe for the least likely and unintended user would hold all other users hostage. *Id.* Instead, the court looked at the possibility that Emeterio should have purchased the substitute lighter and guarded against the risk that the lighter might come into a child's hands. *Id.*

Here, no childproof lighter was available for Jackie Jr.'s parents to purchase. The summary judgment evidence shows a childproof lighter could have been made, but was not produced until at least three years after Jackie Jr. was burned.

After reviewing the summary judgment evidence and applying the risk-utility analysis, we conclude reasonable minds can differ on the outcome of the risk-utility analysis considerations; therefore, the question in this case involves factual disputes. Further, we conclude Kroger has failed to show it is entitled to judgment as a matter of law, and a fact issue exists under the risk-utility analysis.

We sustain points of error one, two, and three.

### Conclusion

We reverse the judgment and remand the cause to the trial court.