COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-04-270-CV

 

 

A.O. SMITH CORPORATION AND A.O. SMITH                        APPELLANTS

WATER
PRODUCTS COMPANY, A DIVISION 

OF
A.O. SMITH CORPORATION

 

                                                   V.

 

SETTLEMENT INVESTMENT MANAGEMENT                               APPELLEE

D/B/A
MARINA DEL REY APARTMENTS

 

                                              ------------

 

             FROM
THE 48TH DISTRICT COURT OF TARRANT
COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.                   
Introduction








            This products liability case concerns a commercial water
heater that overheated and set fire to an apartment building.  Appellants, A.O. Smith Corp. and A.O. Smith
Water Products Co. (collectively, AA.O.
Smith@),
complain that the trial court erred by denying their motion for judgment
notwithstanding the verdict because there is no evidence that the alternative
designs proposed by Appellee, Settlement Investments d/b/a Marina Del Rey, were
economically feasible, and no evidence that the alternative designs would not
pose an equal or greater risk of harm under other circumstances.  We affirm.

II.                
Factual and
procedural background

            The following facts were stipulated at trial.  On June 2, 2000, a fire damaged the Marina
Del Rey Apartments in Grapevine.  The
fire started when hot gasses burned through the insulation on a commercial
water heater installed at the apartments. 
A.O. Smith manufactured the water heater.  The fire caused $160,383.88 of damage in the
form of repair costs and lost rental income. 

Marina Del Rey sued A.O. Smith for products
liability and negligence.  The case was
tried to a jury.  The jury found that a
design defect in the water heater was a producing cause of the damages in
question.  The trial court rendered
judgment for Marina Del Rey. 

III.              
Analysis

            In
two issues, A.O. Smith argues that there is no evidence that the alternative
designs proposed by Marina Del Rey were economically feasible and no evidence
that the alternative designs would not pose an equal or greater risk of harm
under other circumstances.








A.                
Standard of
review

            A trial court may disregard a jury verdict and render
judgment notwithstanding the verdict (AJNOV@) if no evidence supports the jury
finding on an issue necessary to liability or if a directed verdict would have
been proper.  See Tex. R. Civ. P. 301; Tiller v.
McLure, 121 S.W.3d 709, 713 (Tex. 2003); Fort Bend County Drainage Dist.
v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991).  A directed verdict is proper only under
limited circumstances:  (1) when the
evidence conclusively establishes the right of the movant to judgment or
negates the right of the opponent; or (2) when the evidence is insufficient to
raise a material fact issue.  Prudential Ins. Co. v. Fin. Review Servs.,
Inc., 29 S.W.3d 74, 77 (Tex. 2000); Ray v. McFarland, 97 S.W.3d 728,
729-30 (Tex. App.CFort
Worth 2003, no pet.).  We must review the
evidence in the light most favorable to the verdict, crediting evidence
favorable to the jury finding if reasonable jurors could and disregarding
evidence contrary to the finding unless reasonable jurors could not.  See City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005).

B.                
Elements of a
design defect claim

            Products liability cases involving design defects are in
part governed by section 82.005 of the civil practice and remedies code, which
provides as follows:








(a)     In a products liability action in which a claimant alleges a
design defect, the burden is on the claimant to prove by a preponderance of the
evidence that:

 

(1)    there was a safer alternative design; and

 

(2)    the defect was a producing cause of the personal injury, property
damage, or death for which the claimant seeks recovery.

 

(b)    In this section, Asafer alternative design@
means a product design other than the one actually used that in reasonable
probability:

 

(1)    would have prevented or significantly reduced the risk of the
claimant=s
personal injury, property damage, or death without substantially impairing the
product=s
utility;  and

 

(2)    was economically and technologically feasible at the time the
product left the control of the manufacturer or seller by the application of
existing or reasonably achievable scientific knowledge.

 

Tex. Civ. Prac. &
Rem. Code Ann. ' 82.005 (Vernon 2005). 
Technological feasibility and economic feasibility, as required for a
safer alternative design by section 82.005(b)(2) of the statute, are two
different concepts that require separate proof. 
Smith v. Aqua-Flo, Inc., 23 S.W.3d 473, 478 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).








The two elements prescribed
by section 82.005Ca safer
alternative design and producing causeCmust be proved, but are not alone sufficient, to establish liability
for a defectively designed product.  Hernandez
v. Tokai Corp., 2 S.W.3d 251, 256 (Tex. 1999).  A claimant must meet the requirements of the
statute and show, under the common law, that the product as designed was
unreasonably dangerous, taking into consideration the utility of the product
and the risk involved in its use.  Id.

C.                
Marina Del Rey=s evidence

            Marina Del Rey adduced the testimony of two expert
witnesses: Roger Tate and Carl Frahme, Ph.D., a ceramics engineer.  Tate, a forensic mechanical engineer with a
master=s degree
in mechanical engineering, testified that the fire was
caused by a lack of airflow from the water heater=s blower to its gas burner.  The
lack of airflow produced extreme temperatures in the combustion chamber.  The high temperatures melted the heater=s insulation and burned a hole through its exterior skin.  Hot gasses escaped through the hole and set
fire to the building. 








Tate suggested two safer
alternatives to A.O. Smith=s water heater design.  One
involved installing an airflow switch to ensure sufficient air was flowing to
the gas burner.  Tate testified that such
switches are Anot
expensive, not complicated@ and Ain the kind
of quantities we=re talking
about here@ would cost
less than $20 and possibly less than $5 per switch.  Tate=s other alternative design involved installing a thermocoupleCa temperature sensitive switchCnear the combustion chamber or under the heater=s outer skin.  Tate testified
that this design modification Acan also be done economically@ and would cost under $5 per unit. 

Marina Del Rey=s other expert, Dr. Carl Frahme, is a metallurgical engineer who
received a Ph.D. in ceramic engineering in 1966 and who has extensive
experience in developing and marketing high-temperature insulation, refractory
ceramics, and parts for combustion systems and industrial furnaces.  Frahme testified that most industrial
furnaces have a thermocouple wired to an alarm or shutdown controller to
protect against excessive temperatures. 
The A.O. Smith water heater had no such protection.  Frahme testified that a water heater design
incorporating over-temperature protection was feasible but would add to the
cost.  He estimated the cost would be
about $200 Aon a one or
two basis@ but Awould be quite a bit less than that in a manufacturing situation.@ Frahme agreed that a thermocouple was Apretty cheap protection@ on a $9,000 water heater. 

D.                
Economic
feasibility








            In its first issue, A.O. Smith argues that there is no
evidence that the alternative designs suggested by Tate and Frahme were
economically feasible.[2]  We disagree. 
Tate and Frahme testified that the design of A.O. Smith=s $9,000 water heater could be made
safer with the addition of parts costing somewhere between $5 and $200.  Tate specifically testified that the proposed
modification could be done Aeconomically.@ 
But A.O. Smith further argues that Marina Del Rey failed to show the
cost of implementing the alternative designs into the manufacturing
process.  We are unpersuaded by this
argument for two reasons.








First, we find no case or statute that requires a
plaintiff in a design defect case to prove the actual manufacturing cost of an
alternative design, as opposed to presenting some evidence that the alternative
design is economically feasible.  A.O.
Smith points to Robins v. Kroger to support its argument.  In Robins, a child was burned while
playing with a cigarette lighter that lacked a child-safety feature.  Robins v. Kroger, 982 S.W.2d
156, 158 (Tex. App.CHouston
[1st Dist.] 1998, pet. denied).  The
plaintiff relied on a report from the Consumer Product Safety Commission that
estimated the manufacturing cost of a child-safety feature was one to five
cents per lighter.  Id. at
164.  The court conducted a risk-utility
analysis and determined that the report (among other evidence) created a fact
issue on the question of whether the lighter=s
design was defective.  Id.  While the plaintiff in Robins adduced
evidence of the cost to manufacture an alternative design, we do not read that
case to require such proof. 
Manufacturing cost may be one way to prove economic feasibility, but it
is not the only way.

Second, Frahme testified that the cost to add a
thermocouple to a water heater would be Aquite
a bit less@ than
$200 Ain a manufacturing
situation.@  Even if we accepted A.O. Smith=s premise, Marina Del Rey presented
some evidence of the manufacturing cost of its proposed safer design.








A.O. Smith next argues that Tate=s and Frahme=s
testimony on economic feasibility is no evidence because it is Amere speculation,@ citing General Motors Corp. v.
Sanchez, 997 S.W.2d 584, 591 (Tex. 1999), and  Schaefer v. Tex. Employers= Ins. Assoc., 612 S.W.2d 199, 204 (Tex.
1980).  We disagree.  In Schaefer, an expert testified that
the plaintiff contracted a disease in the course of his employment from
exposure to infected bird droppings.  Id.  The expert based his opinion on his
assumptions that Schaefer had contracted the avian form of a certain disease, that
the pathogen causing the disease was present in bird droppings at Schaefer=s workplace, and that Schaefer had contracted the disease from the
bird droppings.  Id.  No evidence was introduced to show that
Schaefer had the avian form of the disease, that bird droppings at Schaefer=s workplace were infected with the pathogen, or how Schaefer
contracted the disease.  Id.   Based on that record, the supreme court held
that the expert=s opinion
was founded upon mere possibility, speculation, and surmise.  Id. 
In Sanchez, an expert testified about a safer alternative
design for a pickup truck transmission.  Sanchez,
997 S.W.2d at 591.  The supreme court
held that the expert=s opinion
was more than mere speculation because he described Athe current operation of the . . . transmission at length, and
explained in some detail how his proposed design would make the transmission
safer by eliminating the risk@ that led to the injury in question. 
Id.

This case is more like Sanchez
than Schaefer.  Tate and Frahme
testified in considerable detail how their proposed alternative designs would
make the $9,000 water heater safer at a cost of only $5 to $200 per unit.  Coupled with Frahme=s background in designing and marketing components for
high-temperature applications, their testimony on economic feasibility rises
above the level of mere speculation and into the zone of Asome evidence@ to support
the jury=s verdict.

We conclude that Marina Del
Rey adduced more than a scintilla of evidence to show that its proposed
alternative designs were economically feasible. 
We overrule A.O. Smith=s first issue.

E.                 
Risk of harm
under other circumstances

            In its second issue, A.O. Smith argues that there is no
evidence that the proposed alternative water heater designs would not, under
other circumstances, impose an equal or greater risk of harm.  Again, we disagree.








In Uniroyal Goodrich Tire Co. v. Martinez,
the Supreme Court of Texas held,

[A]
manufacturer should not be [held] liable for failing to adopt an alternative
design that would, under other circumstances, impose an equal or greater risk
of harm.  To prevail in a design defect
case, a plaintiff should be required to show that the safety benefits from its
proposed design are foreseeably greater than the resulting costs, including any
diminished usefulness or diminished safety.

 

977 S.W.2d 328, 337 (Tex. 1998); see also Costilla v.
Crown Equip. Corp., 148 S.W.3d 736, 739-40 (Tex. App.CDallas 2004, no pet.); Smith v.
Louisville Ladder Co., 237 F.3d 515, 520 (5th Cir. 2001) (both applying the Uniroyal test).

In other words, in proving
that a product is defectively designed, a claimant must not only meet the
requirements of section 82.005, but must also show, under the common law, that
the safer alternative design satisfies the risk-utility test.  Hernandez, 2 S.W.3d at 256, 258.  In addition to reducing the risk in the
instant case, the alternative design also must not impose an equal or greater
risk of harm under other circumstances.  Uniroyal,
997 S.W.2d at 337.[3]








In our case, Tate testified
that a temperature monitoring device in the heater=s combustion chamber would protect against overheating and fire
whenever the combustion chamber overheated, regardless of whether the
overheating was caused by a lack of airflow, as in this case, Aor any other B a water
leak, whatever the cause is.@  Likewise, Frahme testified
that A[if] the proper thermocouple were placed in the proper position within
a control system, then any improper increase in temperature . . . would
have shut the unit down and would have likely prevented the fire.@  (Emphasis added.)  Tate=s and Frahme=s testimony
is some evidence that their proposed alternative design would have been saferCand by inference, not have imposed equal or greater risks of harmCunder circumstances other than the one that caused the fire in this
case.  We overrule A.O. Smith=s second issue.

IV.             
Conclusion

            Having
overruled both of Appellants=s
issues, we affirm the judgment of the trial court.

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and WALKER, JJ.

 

DELIVERED:  January 26, 2006











[1]See Tex. R. App. P. 47.4.





[2]A.O.
Smith acknowledges that the testimony of Tate and Frahme constitutes some
evidence of technological feasibility. 





[3]A.O.
Smith concedes that there is some evidence that Frahme=s
proposed alternative design would have been safer in the instant case, i.e.,
that it would have reduced the risk of fire under the circumstances of this
case.