A.O.SMITH CORPORATION ET AL. V. SETTLEMENT INVESTMENT MANAGEMENT ET AL.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-270-CV

A.O. SMITH CORPORATION AND A.O. SMITH APPELLANTS

WATER PRODUCTS COMPANY, A DIVISION 

OF A.O. SMITH CORPORATION

V.

SETTLEMENT INVESTMENT MANAGEMENT APPELLEE

D/B/A MARINA DEL REY APARTMENTS

------------

FROM THE 48
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

This products liability case concerns a commercial water heater that overheated and set fire to an apartment building.  Appellants, A.O. Smith Corp. and A.O. Smith Water Products Co. (collectively, “A.O. Smith”), complain that the trial court erred by denying their motion for judgment notwithstanding the verdict because there is no evidence that the alternative designs proposed by Appellee, Settlement Investments d/b/a Marina Del Rey, were economically feasible, and no evidence that the alternative designs would not pose an equal or greater risk of harm under other circumstances.  We affirm.

Factual and procedural background

The following facts were stipulated at trial.  On June 2, 2000, a fire damaged the Marina Del Rey Apartments in Grapevine.  The fire started when hot gasses burned through the insulation on a commercial water heater installed at the apartments.  A.O. Smith manufactured the water heater.  The fire caused $160,383.88 of damage in the form of repair costs and lost rental income. 

Marina Del Rey sued A.O. Smith for products liability and negligence.  The case was tried to a jury.  The jury found that a design defect in the water heater was a producing cause of the damages in question.  The trial court rendered judgment for Marina Del Rey. 

Analysis

In two issues, A.O. Smith argues that there is no evidence that the alternative designs proposed by Marina Del Rey were economically feasible and no evidence that the alternative designs would not pose an equal or greater risk of harm under other circumstances.

Standard of review

A trial court may disregard a jury verdict and render judgment notwithstanding the verdict (“JNOV”) if no evidence supports the jury finding
 on an issue necessary to liability or if a directed verdict would have been proper.  
See
 Tex. R. Civ. P. 
301
; Tiller v. McLure
, 121 S.W.3d 709, 713 (Tex. 2003); 
Fort Bend County Drainage Dist. v. Sbrusch,
 818 S.W.2d 392, 394 (Tex. 1991).  A directed verdict is proper only under limited circumstances:  (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent; or (2) when the evidence is insufficient to raise a material fact issue. 
 Prudential Ins. Co. v. Fin. Review Servs., Inc.
, 29 S.W.3d 74, 77 (Tex. 2000); 
Ray v. McFarland,
 97 S.W.3d 728, 729-30 (Tex. App.—Fort Worth 2003, no pet.).  We must review the evidence in the light most favorable to the verdict, crediting evidence favorable to the jury finding if reasonable jurors could and disregarding evidence contrary to the finding unless reasonable jurors could not.  
See City of Keller v. Wilson
, 168 S.W.3d 802, 827 (Tex. 2005).

Elements of a design defect claim

Products liability cases involving design defects are in part governed by section 82.005 of the civil practice and remedies code, which provides as follows:

(a) In a products liability action in which a claimant alleges a design defect, the burden is on the claimant to prove by a preponderance of the evidence that:

(1) there was a safer alternative design; and

(2) the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.

(b) In this section, “safer alternative design” means a product design other than the one actually used that in reasonable probability:

(1) would have prevented or significantly reduced the risk of the claimant’s personal injury, property damage, or death without substantially impairing the product’s utility;  and

(2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

Tex. Civ. Prac. & Rem. Code Ann.
 § 82.005 (Vernon 2005).  Technological feasibility and economic feasibility, as required for a safer alternative design by section 82.005(b)(2) of the statute, are two different concepts that require separate proof.  
Smith v. Aqua-Flo, Inc.
, 23 S.W.3d 473, 478 (Tex. App.—Houston [14th
 Dist.] 2000, pet. denied).

The two elements prescribed by section 82.005—a safer alternative design and producing cause—must be proved, but are not alone sufficient, to establish liability for a defectively designed product.  
Hernandez v. Tokai Corp.,
 2 S.W.3d 251, 256 (Tex. 1999).  A claimant must meet the requirements of the statute 
and
 show, under the common law, that the product as designed was unreasonably dangerous, taking into consideration the utility of the product and the risk involved in its use.  
Id.

Marina Del Rey’s evidence

Marina Del Rey adduced the testimony of two expert witnesses: Roger Tate and Carl Frahme, Ph.D., a ceramics engineer.  Tate, a forensic mechanical engineer with a master’s degree in mechanical engineering
,
 testified that the fire was caused by a lack of airflow from the water heater’s blower to its gas burner.  The lack of airflow produced extreme temperatures in the combustion chamber.  The high temperatures melted the heater’s insulation and burned a hole through its exterior skin.  Hot gasses escaped through the hole and set fire to the building. 

Tate suggested two safer alternatives to A.O. Smith’s water heater design.  One involved installing an airflow switch to ensure sufficient air was flowing to the gas burner.  Tate testified that such switches are “not expensive, not complicated” and “in the kind of quantities we’re talking about here” would cost less than $20 and possibly less than $5 per switch.  Tate’s other alternative design involved installing a thermocouple—a temperature sensitive switch—near the combustion chamber or under the heater’s outer skin.  Tate testified that this design modification “can also be done economically” and would cost under $5 per unit. 

Marina Del Rey’s other expert, Dr. Carl Frahme, is a metallurgical engineer who received a Ph.D. in ceramic engineering in 1966 and who has extensive experience in developing and marketing high-temperature insulation, refractory ceramics, and parts for combustion systems and industrial furnaces.  Frahme testified that most industrial furnaces have a thermocouple wired to an alarm or shutdown controller to protect against excessive temperatures.  The A.O. Smith water heater had no such protection.  Frahme testified that a water heater design incorporating over-temperature protection was feasible but would add to the cost.  He estimated the cost would be about $200 “on a one or two basis” but “would be quite a bit less than that in a manufacturing situation.” Frahme agreed that a thermocouple was “pretty cheap protection” on a $9,000 water heater. 

Economic feasibility

In its first issue, A.O. Smith argues that there is no evidence that the alternative designs suggested by Tate and Frahme were economically feasible.
(footnote: 2)  We disagree.  Tate and Frahme testified that the design of A.O. Smith’s $9,000 water heater could be made safer with the addition of parts costing somewhere between $5 and $200.  Tate specifically testified that the proposed modification could be done “economically.”  But A.O. Smith further argues that Marina Del Rey failed to show the cost of implementing the alternative designs into the manufacturing process.  We are unpersuaded by this argument for two reasons.

First, we find no case or statute that requires a plaintiff in a design defect case to prove the actual manufacturing cost of an alternative design, as opposed to presenting some evidence that the alternative design is economically feasible.  A.O. Smith points to 
Robins v. Kroger 
to support its argument. 
 In 
Robins
, a child was burned while playing with a cigarette lighter that lacked a child-safety feature.  
Robins v. Kroger
,
 
982 S.W.2d 156, 158 (Tex. App.—Houston [1st
 Dist.] 1998, pet. denied).  The plaintiff relied on a report from the Consumer Product Safety Commission that estimated the manufacturing cost of a child-safety feature was one to five cents per lighter.  
Id.
 at 164.  The court conducted a risk-utility analysis and determined that the report (among other evidence) created a fact issue on the question of whether the lighter’s design was defective.  
Id.
  While the plaintiff in 
Robins 
adduced evidence of the cost to manufacture an alternative design, we do not read that case to require such proof.  Manufacturing cost may be one way to prove economic feasibility, but it is not the only way.

Second, Frahme testified that the cost to add a thermocouple to a water heater would be “quite a bit less” than $200 “in a manufacturing situation.”  Even if we accepted A.O. Smith’s premise, Marina Del Rey presented some evidence of the manufacturing cost of its proposed safer design.

A.O. Smith next argues that Tate’s and Frahme’s testimony on economic feasibility is no evidence because it is “mere speculation,” citing 
General Motors Corp. v. Sanchez, 
997 S.W.2d 584, 591 (Tex. 1999)
, and  
Schaefer v. Tex. Employers’ Ins. Assoc.
, 612 S.W.2d 199, 204 (Tex. 1980).  We disagree.  In 
Schaefer
, an expert testified that the plaintiff contracted a disease in the course of his employment from exposure to infected bird droppings.  
Id.
  The expert based his opinion on his assumptions that Schaefer had contracted the avian form of a certain disease, that the pathogen causing the disease was present in bird droppings at Schaefer’s workplace, and that Schaefer had contracted the disease from the bird droppings.  
Id.
  No evidence was introduced to show that Schaefer had the avian form of the disease, that bird droppings at Schaefer’s workplace were infected with the pathogen, or how Schaefer contracted the disease.  
Id.
   Based on that record, the supreme court held that the expert’s opinion was founded upon mere possibility, speculation, and surmise.  
Id.  
In 
Sanchez
, an expert testified about a safer alternative design for a pickup truck transmission.  
Sanchez
, 997 S.W.2d at 591.  The supreme court held that the expert’s opinion was more than mere speculation because he described “the current operation of the . . . transmission at length, and explained in some detail how his proposed design would make the transmission safer by eliminating the risk” that led to the injury in question.  
Id.

This case is more like 
Sanchez
 than 
Schaefer.
  Tate and Frahme testified in considerable detail how their proposed alternative designs would make the $9,000 water heater safer at a cost of only $5 to $200 per unit.  Coupled with Frahme’s background in designing and marketing components for high-temperature applications, their testimony on economic feasibility rises above the level of mere speculation and into the zone of “some evidence” to support the jury’s verdict.

We conclude that Marina Del Rey adduced more than a scintilla of evidence to show that its proposed alternative designs were economically feasible.  We overrule A.O. Smith’s first issue.

Risk of harm under other circumstances

In its second issue, A.O. Smith argues that there is no evidence that the proposed alternative water heater designs would not, under other circumstances, impose an equal or greater risk of harm.  Again, we disagree.

In 
Uniroyal Goodrich Tire Co. v. Martinez
, the Supreme Court of Texas held,

[A] manufacturer should not be [held] liable for failing to adopt an alternative design that would, under other circumstances, impose an equal or greater risk of harm.  To prevail in a design defect case, a plaintiff should be required to show that the safety benefits from its proposed design are foreseeably greater than the resulting costs, including any diminished usefulness or diminished safety.

977 S.W.2d 328, 337 (Tex. 1998); 
see also
 
Costilla v. Crown Equip. Corp.
, 148 S.W.3d 736, 739-40 (Tex. App.—Dallas 2004, no pet.); 
Smith v. Louisville Ladder Co.
, 237 F.3d 515, 520 (5th
 Cir. 2001)
 (both applying the 
Uniroyal
 test).

In other words, in proving that a product is defectively designed, a claimant must not only meet the requirements of section 82.005, but must also show, under the common law, that the safer alternative design satisfies the risk-utility test.  
Hernandez
, 2 S.W.3d at 256, 258.  In addition to reducing the risk in the instant case, the alternative design also must not impose an equal or greater risk of harm under other circumstances.  
Uniroyal
, 997 S.W.2d at 337.
(footnote: 3)
 In our case, Tate testified that a temperature monitoring device in the heater’s combustion chamber would protect against overheating and fire whenever the combustion chamber overheated, regardless of whether the overheating was caused by a lack of airflow, as in this case, “or any other – a water leak, whatever the cause is.”  Likewise, Frahme testified that “[if] the proper thermocouple were placed in the proper position within a control system, then 
any improper increase in temperature . . . 
would have shut the unit down and would have likely prevented the fire.”  (Emphasis added.)  Tate’s and Frahme’s testimony is some evidence that their proposed alternative design would have been safer—and by inference, not have imposed equal or greater risks of harm—under circumstances other 
than the one that caused the fire in this case.  We overrule A.O. Smith’s second issue.

Conclusion

Having overruled both of Appellants’s issues, we affirm the judgment of the trial court.

ANNE GARDNER

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

DELIVERED:  January 26, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
A.O. Smith acknowledges that the testimony of Tate and Frahme constitutes some evidence of technological feasibility. 

3:
A.O. Smith concedes that there is some evidence that Frahme’s proposed alternative design would have been safer in the instant case, i.e., that it would have reduced the risk of fire under the circumstances of this case.