**Raymond W. WHITMIRE, Sr., Plaintiff,**

v.

**TEREX TELELECT, INC., and Zurich American Insurance Company, Defendants.**

No. Civ.A.1:03–CV–00051.

United States District Court, E.D. Texas, Beaumont Division.

May 5, 2005.

---

Curtis Wynne Leister, Beaumont, TX, for Plaintiff.

Daniel O. Goforth, Casey A. Bell, Houston, TX, for Defendants.

## MEMORANDUM AND ORDER

CRONE, District Judge.

Pending before the court is Defendant Terex Telelect, Inc.'s ("Terex"), Motion for Summary Judgment (# 51). Terex seeks summary judgment on Plaintiff Raymond W. Whitmire, Sr.'s ("Whitmire"), claims of strict products liability, negligence, and breach of express and/or implied warranties of safety arising from injuries he allegedly sustained in an accident involving a digger derrick truck[1] designed, manufactured, and marketed by Terex. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment should be granted in part and denied in part.

### I. Background

On or about June 5, 2001, Whitmire, a heavy equipment operator, was operating a Terex Telelect Commander 4045 Model Digger Derrick ("digger derrick") "mounted on the chassis of a heavy duty pickup truck which requires a commercial driver's license to operate." Whitmire had worked with and operated the digger derrick for approximately one week prior to the incident in question. On the day of the accident, Whitmire, his brother, L.D. Whitmire, and his son, Raymond Whitmire, Jr. ("Whitmire, Jr."), were working with a group of employees from L.E. Myers Co. ("Myers"), installing new utility poles and lines along a residential street in San Antonio, Texas.

After arriving at the work site, Whitmire climbed up into the operator's chair of the digger derrick to begin operating the equipment. Before starting work, a co-worker notified Whitmire that an electrical pole down the street was uneven and needed to be straightened with the digger derrick. Instead of descending from the operator's chair and getting into the truck, Whitmire remained in the chair and, because the rest of the crew was elsewhere, instructed Whitmire, Jr., who had never driven the truck and did not have a commercial driver's license, to back the truck down the road to the uneven pole. Whitmire, Jr., complied and drove the truck in reverse while Whitmire remained in the operator's chair.

As he proceeded in reverse, Whitmire, Jr., inadvertently drove the truck toward some tree limbs, one of which struck Whitmire in the mid-back area and pushed him forward out of his seat. According to Whitmire, he "stepped out and got [his] foot on the step" and "swung around to get on the side of the truck to get away from the limb." When he reached for a handhold, he discovered that there was nothing for him to grab. After losing his balance, Whitmire fell out of the chair and plunged twelve feet to the ground, allegedly suffering significant bodily injuries, including a broken neck and a broken hand. In contrast, Terex claims that Whitmire and his crew violated basic safety rules that led to Whitmire's being struck by a branch, which knocked him out of the operator's chair and onto the ground. As a consequence, Terex argues, Whitmire "cannot prove that he would not have suffered his injuries had there been additional 'grab-rails' or an intermediate step on the digger derrick in question."

Whitmire, a resident of Mauriceville, Orange County, Texas, instituted this diversity action, on January 24, 2003, asserting products liability claims against Terex, a wholly-owned subsidiary of Terex Utilities. Terex is incorporated in the State of Delaware and maintains its principal place of business in Watertown,

---

1. Also known as a pole truck, a digger truck, or an auger truck.

South Dakota. Zurich American Insurance Company, Myers's workers' compensation carrier, was added to the lawsuit as an additional defendant due to a potential subrogation interest it may have in this case. In his complaint, Whitmire alleges that the digger derrick, "as designed, manufactured and sold by Defendant, had inadequate and unsafe means of egress and ingress, and inadequate guarding or protective material, which was a proximate cause of injury to Plaintiff." In addition, Whitmire asserts that the digger derrick was "unreasonably dangerous and defectively designed, marketed and sold (including inadequate or defective warnings and instructions), and reached Plaintiff in substantially the same condition in which it left Defendant's custody, which was a producing cause of the occurrence in question and Plaintiff's injuries and damages."

Whitmire also alleges that Terex was negligent in the design, manufacture, marketing, and sale of the digger derrick, which was a proximate cause of Whitmire's injuries and damages. Lastly, Whitmire claims that Terex breached express and/or implied warranties of safety with respect to the digger derrick, which was a proximate cause of Whitmire's injuries and damages. As a result of Terex's allegedly tortious conduct, Whitmire is seeking damages for present and future bodily injuries, including loss of earnings and earning capacity, medical and hospitalization expenses, physical impairment, physical pain, and mental anguish.

On November 12, 2004, Terex filed its motion for summary judgment, claiming that neither Whitmire nor Zurich can "prove the causation elements of either their claim of defective design or their negligence cause of action and because neither Plaintiff nor Intervenor can prove the safer alternative design element of their strict product liability claim or that Defendants breached any duty to them as is required to show negligence." Specifically, Terex argues that Whitmire has adduced no evidence to show that any design defect was a producing cause of his injuries or that the digger derrick at issue was unreasonably dangerous. With respect to his negligence claim, Terex states that Whitmire "has no evidence that it was reasonably foreseeable to Terex–Telelect, Inc. that Plaintiff and his crew members would abandon common sense and violate basic safety rules and that the digger derrick would be backed into a tree knocking Mr. Whitmire out of the operator's chair."

## II. *Analysis*

### A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002); *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir.1999).

"A fact is *'material'* if it *'might affect* the outcome of the suit under governing law.'" *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir.2001) (emphasis in original) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505); *see Harken Exploration Co. v. Sphere Drake Ins. PLC,* 261 F.3d 466, 471 (5th Cir.2001); *Merritt–Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir.1999); *Burgos v. Southwestern Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir.1994). "An issue is *'genuine'* if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan,* 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *accord Harken Exploration Co.,* 261 F.3d at 471; *Merritt–Campbell, Inc.,* 164 F.3d at 961. The moving party, however, needs not negate the elements of the nonmovant's case. *See Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999), *cert. denied,* 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000); *Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1075. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita*

*Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348). All the evidence must be construed "in the light most favorable to the nonmoving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir.1996); *see Reeves,* 530 U.S. at 150, 120 S.Ct. 2097; *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003); *Harken Exploration Co.,* 261 F.3d at 471; *Daniels v. City of Arlington,* 246 F.3d 500, 502 (5th Cir.), *cert. denied,* 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001); *Colson,* 174 F.3d at 506. The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor. *See Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505); *Martin v. Alamo Cmty. Coll. Dist.,* 353 F.3d 409, 412 (5th Cir. 2003); *Martinez,* 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 507 (5th Cir.), *cert. denied,* 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003); *Chaplin v. NationsCredit Corp.,* 307 F.3d 368, 372 (5th Cir.2002); *Harken Exploration Co.,* 261 F.3d at 471.

Nevertheless, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005, 1012 (2d Cir.1989)). "If the [nonmoving party's] theory is … senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468–69, 112 S.Ct. 2072. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions,

speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little,* 37 F.3d at 1075; *see Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Wallace,* 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown,* 337 F.3d at 541; *see Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.,* 292 F.3d 466, 468 (5th Cir.), *cert. denied,* 537 U.S. 950, 123 S.Ct. 386, 154 L.Ed.2d 295 (2002).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Wenner v. Texas Lottery Comm'n,* 123 F.3d 321, 324 (5th Cir.1997), *cert. denied,* 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. *Abandonment of Claims*

■ In his response to the summary judgment motion, Whitmire does not address his causes of action for manufacturing and marketing defects or breach of express and/or implied warranties of safety and appears to have abandoned them.

Indeed, because he did not raise or brief these issues in his responsive brief, any claims by Whitmire relying on these theories have been waived and are no longer at issue. *See Bursztajn v. United States,* 367 F.3d 485, 491 (5th Cir.2004); *Scales v. Slater,* 181 F.3d 703, 709 n. 5 (5th Cir. 1999); *Yohey v. Collins,* 985 F.2d 222, 224–25 (5th Cir.1993); *Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir.1991); *see also Davis v. Cannon,* 91 Fed.Appx. 327, 329, 2004 WL 362233 (5th Cir.2004). Therefore, these claims are subject to dismissal as a matter of law.

### C. *Products Liability—Texas Law*

In asserting his products liability claims, Whitmire relies on Restatement (Third) of Torts: Products Liability §§ 1–3, complaining of the allegedly defective design of the digger derrick. The relevant sections of the Restatement provide as follows:

### § 1. LIABILITY OF COMMERCIAL SELLER OR DISTRIBUTOR FOR HARM CAUSED BY DEFECTIVE PRODUCTS

One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect.

RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 1 (1998).

### § 2. CATEGORIES OF PRODUCT DEFECT

A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:

(a) contains a manufacturing defect when the product departs from its intended design even though all possi-

ble care was exercised in the preparation and marketing of the product; (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;

(c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

*Id.* at § 2.

### § 3. CIRCUMSTANTIAL EVIDENCE SUPPORTING INFERENCE OF PRODUCT DEFECT

It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:

(a) was of a kind that ordinarily occurs as a result of product defect; and

(b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.

*Id.* at § 3.

■ Products liability claims in Texas fall into three categories: design defect, manufacturing defect, and marketing defect, also referred to as warning defect. *See American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 426 & n. 1 (Tex.1997); *see also Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86, 88 (Tex.2001); *Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 382 (Tex. 1995); *Technical Chem. Co. v. Jacobs,* 480 S.W.2d 602, 604–05 (Tex.1972); *Borg–Warner Corp. v. Flores,* 153 S.W.3d 209, 220 (Tex.App.—Corpus Christi 2004, no pet.).

#### 1. *Design Defect*

Whitmire alleges that the digger derrick was unreasonably dangerous and that a safer alternative design existed. Specifically, Whitmire contends that Terex failed to equip its digger derrick with adequate access to and from the operator's chair, including a lack of handholds or handrails and an intermediate step, and failed to shield adequately the operator working in that position.

■ "The duty to design a safe product is 'an obligation imposed by law.'" *Grinnell,* 951 S.W.2d at 432 (quoting *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787, 789 (Tex.1967)); *accord Robins v. Kroger Co.,* 982 S.W.2d 156, 161 (Tex.App.—Houston [1st Dist.] 1998, pet. denied). Although the Restatement (Third) of Torts: Products Liability does not use the phrase "unreasonably dangerous," Texas courts employ a risk utility analysis to determine whether a product has a design defect that renders it unreasonably dangerous. *See Flock v. Scripto–Tokai Corp.,* 319 F.3d 231, 239 (5th Cir. 2003); *Hernandez v. Tokai Corp.,* 2 S.W.3d 251, 254–56, 258 (Tex.1999); *General Motors Corp. v. Sanchez,* 997 S.W.2d 584, 588 (Tex.1999); *see also Grinnell,* 951 S.W.2d at 426 n. 1; *Daimlerchrysler Corp. v. Hillhouse,* 161 S.W.3d 552–53 (Tex. App.—San Antonio 2004, no pet.); *Honda of Am. Mfg., Inc. v. Norman,* 104 S.W.3d 600, 604 (Tex.App.—Houston [1st Dist.] 2003, pet. denied); *General Motors Corp. v. Harper,* 61 S.W.3d 118, 124 (Tex.App.—

Eastland 2001, pet. denied). "The objective is to hold manufacturers of products designed with excessive risks accountable, but at the same time, to protect manufacturers of products that are 'safe enough.'" *Robins,* 982 S.W.2d at 161 (citations omitted).

■■ Under Texas law, "liability for a design defect may attach even if the defect is apparent." *Grinnell,* 951 S.W.2d at 433 (citing *Turner v. General Motors Corp.,* 584 S.W.2d 844, 850 (Tex.1979)); *see Flock,* 319 F.3d at 242; *Robins,* 982 S.W.2d at 161. The user's awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product and the expectations of the ordinary consumer are factors that may be considered in a risk-utility analysis but are not dispositive of the issue of design defect. *See Grinnell,* 951 S.W.2d at 432. Thus, in Texas, there is no "common-knowledge" or "open and obvious" defense to a design defect claim. *See id.* at 432–33. While perhaps decisive in a particular case, "in general, the obviousness of danger in and of itself is not an absolute bar—like certain affirmative defenses—to liability for a defective design." *Hernandez,* 2 S.W.3d at 258; *see Flock,* 319 F.3d at 242.

■■ By statute in Texas, "[a] plaintiff must prove that there is a safer alternative design in order to recover under a design defect theory." *Sanchez,* 997 S.W.2d at 588 (citing *Caterpillar, Inc.,* 911 S.W.2d at 384); *accord Hernandez,* 2 S.W.3d at 258; *Daimlerchrysler Corp.,* at 552–53; *Honda of Am. Mfg., Inc.,* 104 S.W.3d at 608. Section 82.005 of the Texas Civil Practice and Remedies Code provides:

(a) In a products liability action in which a claimant alleges a design defect, the burden is on the claimant to prove by a preponderance of the evidence that:

(1) there was a safer alternative design; and

(2) the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.

(b) In this section, "safer alternative design" means a product design other than the one actually used that in reasonable probability:

(1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and

(2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

TEX. CIV. PRAC. & REM.CODE ANN. § 82.005(a), (b). "Alternative designs must substantially reduce the risk of injury and be both economically and technologically feasible." *Sanchez,* 997 S.W.2d at 588. The requirement of Section 82.005 that a claimant prove a safer alternative design "applies to all products liability actions whether brought as strict liability, as breach of implied warranty, or a combination of those theories." *Smith v. Louisville Ladder Co.,* 237 F.3d 515, 520 (5th Cir.2001) (citing TEX. CIV. PRAC. & REM.CODE ANN. § 82.001(2)).

■■ "[S]ection 82.005 prescribes two elements—a safer alternative design and producing cause—that must be proved, but are not alone sufficient, to establish liability for a defectively designed product." *Hernandez,* 2 S.W.3d at 256; *accord Honda of Am. Mfg., Inc.,* 104 S.W.3d at 604. "A claimant must not only meet the proof requirements of the statute but must show, under the common law, that the product was defectively designed

so as to be unreasonably dangerous, taking into consideration the utility of the product and the risk involved in its use." *Hernandez,* 2 S.W.3d at 257; *see Flock,* 319 F.3d at 241; *Honda of Am. Mfg., Inc.,* 104 S.W.3d at 604. This analysis includes consideration of the following factors:

"(1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or the existence of suitable warnings or instructions; and (5) the expectations of the ordinary consumer."

*Hernandez,* 2 S.W.3d at 256 (quoting *Grinnell,* 951 S.W.2d at 432); *see Flock,* 319 F.3d at 241.

Terex argues that Whitmire has no evidence that the digger derrick, by lacking "grab-rails" or an intermediate step, was unreasonably dangerous. Terex asserts that the digger derrick "at the time of this accident was in a condition which was contemplated by the ordinary purchasers and users of such a product." In addition, Terex claims that Whitmire has failed to produce evidence that a safer alternative design existed at the time the digger derrick was designed and manufactured. Specifically, Terex contends that Whitmire "cannot prove with reasonable probability that his injuries would not have occurred or that the risk of such injuries would have been significantly reduced with a different design." Terex argues that the lack of testing and evidence "from the field" prevents Whitmire from establishing that the addition of "grab-rails" and/or an intermediate step would have constituted a safer alternative design.

In response, Whitmire alleges that "[a] safer alternative designed existed: either a vertical grab rail or an intermediate step, or both." Whitmire also submits evidence that a digger derrick existed with a cab or other device that shielded the operator in the cab. According to Whitmire, "[n]one of the devices are complicated technical or mechanical devices, and could have easily been added to the product by defendant." In support of his contention, Whitmire relies on the affidavit of Don Reichert ("Reichert"), a professional, mechanical engineer, who is familiar with digger derricks.

According to Reichert, "[t]he control station access [on the product in question] has no effective grab rails or handrails on the access face to enable the climber to achieve and maintain the required 'three point contact.' " "Three-point contact," according to Reichert, refers to three-point support (*i.e.,* one hand and two feet, or two hands and one foot) while ascending or descending the access system. Reichert also opines that "[t]he access/egress means on the Terex Telelect 4045 Digger Derrick is unsafe and non-conforming to the recommendations, standards, and industry practice at the time of the manufacture and sale." In reference to the digger derrick at issue, Reichert states:

This step height exceeds the recommended height of approximately 12 inches found in virtually every ladder-rung-spacing standard practice. The simple addition of a step attached to the floor of the control station and midway below the 25–inch floor height is a safer design alternative.

\*    \*    \*    \*    \*    \*

Providing continuous vertically oriented grab rails on each side of the control station entrance is a safer alternative to the hand grabs located on the top and front of the C4045 control console. The forward grab rails should extend at least from the top of the console to the lower intermediate step, and at the top, curve forward then around the control console. The rear hand grab should extend from a height above the top of the seat arm rest, and extend behind the seat to the maximum height of the unit. The feasibility of this safer design is demonstrated by several examples of user-modified machines, competitor machines and current specified machines purchased by large utilities.

Attached to his response, Whitmire provides photographs of models that include the proposed safer alternative design. He maintains that the defect of not having grab rails and/or an intermediate step on the digger derrick was a producing cause of his injuries.

Whitmire also relies on the affidavit of George Greene, Jr. ("Greene"), a professional, mechanical engineer, who worked in private industry as a design engineer and was responsible for new product design. According to Greene, the operator's chair for the digger derrick at issue was positioned twelve feet above ground, which constitutes a serious hazard to the operator should he slip or otherwise be "dislodged from his perch." Greene agrees with Reichert that the digger derrick is "not equipped with a safe means of egress or ingress from the ground to the operator's seat." Furthermore, among other findings, Greene notes that "[n]o warnings are provided for the truck driver or the digger derrick operator which forbids the operator from remaining at this work station during movement of the vehicle." He also points out that "[s]uitable hand holds, railings, ladders or steps were not provid-

ed by the manufacturers to allow the operator to safely and quickly ingress and egress the equipment." Specifically, he states that the digger derrick was defective and unreasonably dangerous due to:

(a) Lack of adequate means to quickly and safely ascend and descend from the operator's seat to the ground.

(b) Failure to warn the truck driver and operator as to the prohibition of the equipment operator remaining at his station during movement of the vehicle.

Whitmire further points to the testimony of Terex's corporate representative, James Olson ("Olson"), who testified as follows:

Q. .... Would it have been technologically feasible for Terex, at the time that it manufactured and sold the digger derrick in 2, to have equipped the digger derrick in 2 with railing such as we see in Exhibit 3? Just from the standpoint of the physics and the mechanics and the technology, would it have been feasible?

A. Yes.

*    *    *    *    *    *

Q. Would you agree that at the time that Terex manufactured and sold the digger derrick in Exhibit 2, that it would have been economically feasible to add the type of railing to the digger derrick in Exhibit 2 as we see in Exhibit 3, just from the standpoint of dollars and cents?

A. Yes, it could have been added.

In addition to proffering photographs of other types of digger derricks, which have incorporated a handrail and/or step system, Whitmire presents excerpts from professional literature addressing equipment safety. Whitmire provides a copy of an article from The National Safety Council's

*Accident Prevention Manual for Business and Industry,* which recommends:

*Guarding, Safety Devices, Platforms, and Means of Access*

Install platforms, footwalks, steps, ladders, handholds, guardrails, and toeboards on all equipment where they are needed to provide safe access. Provide suitable floors or platforms, surfaced with slip-resistant material, for all equipment operators.

Operators of equipment should be protected against the elements, falling objects, swinging loads, and similar hazards. Be sure that windows in cabs or enclosures on equipment are made of safety glass and kept in good repair at all times.

Whitmire also provides the United States Army Corps of Engineers' *Safety and Health Requirements Manual,* which mandates that " '[s]afe access shall be provided to all work areas.' " Furthermore, Whitmire includes a comment from Roland Blake, head of the Bureau of Safety Standards, who writes that "[f]ailure to provide for safe access to every point to which men must go, such as cranes, and the tops of boilers and machines, is responsible for many falls." Moreover, Whitmire submits guidelines from the American Society of Safety Engineers, which state:

Those companies who make material handling or access equipment are at risk if they have not considered fall hazards and escape needs from buckets, platforms, crane cabs, scaffolds, and during erection and maintenance procedures.

\* \* \* \* \* \*

Lack of means for escape from these high work stations means that, in an emergency, the workers could be trapped. For example, a slow-to-respond bucket truck could be a problem if a swarm of bees attacks an elevated operator and causes him to jump. The manufacturers should be able to address this type of problem, once they become aware of even a single occurrence or believe the scenario may occur.

Finally, Reichert points out that "The Society of Automotive Engineers J185 Standard which is applicable to this case, states that 'all Access Systems shall ... permit and, by proper placement of components, promote achievement of three-point support while ascending or descending the access system when more than one meter above the ground.' "

██ Taken together, the evidence submitted by Whitmire in support of his design defect claim creates a fact issue as to whether the digger derrick was defective in its design and, therefore, unreasonably dangerous. The testimony submitted by Whitmire's experts and Terex's corporate representative, along with the professional literature cited, raise genuine issues of material fact as to whether the digger derrick in this case was unreasonably dangerous and whether a safer alternative design, which would have prevented or significantly reduced the risk of Whitmire's injuries without substantially impairing the product's utility, was available. Furthermore, a fact issue exists concerning whether such design was economically and technologically feasible at the time it left the manufacturer or seller.

### 2. Causation—Producing Cause

In its motion, Terex argues that Whitmire cannot prove causation with respect to his design defect claim. Specifically, Terex states "[t]o hold Terex–Telelect, Inc. responsible for his damages, Plaintiff must prove that Terex–Telelect, Inc.'s action or its allegedly defective product caused those damages." Terex alleges that Whitmire has no evidence that the allegedly

defective design of the digger derrick was a producing cause of his injuries.

■■■■ "Under Texas law, causation generally is a question of fact for the jury." *Flock*, 319 F.3d at 237. Proof of causation requires more than mere conjecture, guess, or speculation. *See id.* (citing *Mosley v. Excel Corp.*, 109 F.3d 1006, 1009 (5th Cir.1997)); *Purina Mills, Inc. v. Odell*, 948 S.W.2d 927, 936 (Tex.App.— Texarkana 1997, pet. denied). It need not, however, be supported by direct evidence. *See Flock*, 319 F.3d at 237. "Circumstantial evidence and reasonable inferences therefrom may form a sufficient basis for a finding of causation." *Id.* (citing *Tompkins v. Cyr*, 202 F.3d 770, 782 (5th Cir. 2000)). Establishing causation requires facts sufficient for a jury to make a reasonable inference that the evidence and its logical inferences support the reasonable probability that the defendant's acts or omissions were a substantial factor in bringing about the injury. *See Flock*, 319 F.3d at 237; *Odell*, 948 S.W.2d at 936 (citing *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995); *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 181 (Tex.1995); *Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex.1973); *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796–97 (1951)). "Nevertheless, when circumstances are consistent with either of two factual scenarios and one is no more probable than the other, neither can be inferred." *Id.; see Ford Motor Co. v. Cammack*, 999 S.W.2d 1, 7 (Tex.App.— Houston [14th Dist.] 1998, pet. denied); *Kahlig v. Boyd*, 980 S.W.2d 685, 689 (Tex. App.—San Antonio 1998, pet. denied).

■■■■ In Texas, a showing of producing cause is an essential element for recovery in a products liability case. *See Flock*, 319 F.3d at 238 (citing Tex. Civ. Prac. & Rem.Code Ann. § 82.005(a)(2)). Producing cause is " 'an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages complained of, if any.' " *Union Pump Co.*, 898 S.W.2d at 775 (quoting *Bowser Bouldin, Ltd.*, 896 S.W.2d at 182; *Rourke v. Garza*, 530 S.W.2d 794, 801 (Tex.1975)); *see Flock*, 319 F.3d at 238; *Odell*, 948 S.W.2d at 935–36. "Producing cause is the cause-in-fact of the harm, meaning that a 'defendant's conduct must have been a substantial factor in bringing about the injury and that the injury would not have occurred but for the defendant's conduct.' " *Flock*, 319 F.3d at 238 (quoting *Harper*, 61 S.W.3d at 131).

Terex argues that Whitmire "simply has no evidence to prove that any alleged lack of vertical 'grab-rails' or an intermediate step was a producing cause of his injuries." Terex claims that Whitmire's testimony, along with his son's testimony, show that Whitmire was knocked from the operator's chair to the ground by the force of the truck being backed up into the tree limb. Terex asserts that Whitmire cannot prove that he would not have suffered his injuries had there been additional "grab-rails" or an intermediate step on the digger derrick. In addition, Terex contends that the "true cause of Plaintiff's injuries was his and his crew's failure to keep a proper lookout while an inexperienced driver without the proper license to operate the digger derrick drove it in reverse with Plaintiff twelve feet up in the operator's chair instead of in the cab of the truck."

In response, Whitmire argues that there is sufficient evidence to demonstrate that the defective condition of the digger derrick was a producing cause of his injury. At deposition, Whitmire testified:

Q. So, the way it sounds like it happened to me, then is that you were watching the ground to the sides of you and watching Ray, Jr. as he was backing this thing up five to ten miles an hour.

A. Right.

Q. And all of a sudden you felt the tree limb in your back. Is that right?

A. Yes, sir.

Q. Then what happened?

A. I got his attention, tried to get him to stop the truck; and by the—as that limb hit me in the back, it kind of pushed me forward. It was—and I had to get—had to get out from under it because it was a big enough limb that—that it was not one that would just scratch you up. I felt like it would hurt my back or maybe could be worse. So, as it bent me over, I tried—I climbed out of the seat; and as I was stepping around the end of the truck trying to grab ahold of something, I—that's when I lost my balance.

\*　　\*　　\*　　\*　　\*　　\*

Q. Okay. Tell me again how you moved when you felt that tree limb hit you in the back.

A. As the limb hit me in the back, it pushed me forward.

Q. Did it push you forward out of the seat?

A. Pushing me forward up out of the seat.

Q. Okay.

A. I—as it rolled me, I kind of—I stepped out and got my foot on the step.

Q. Okay.

A. And then I swung around to get on the side of the truck to get away from the limb. There's nothing there. I mean, it's just boom—boom and digger, you know, the auger.

Q. Uh-huh.

A. That's all that's there. I reached for something. There's nothing there.

Whitmire further elaborated:

Q. Do you think there's anything else that my client did that caused this accident?

A. I'm not an engineer, so I don't know how they—the safety—I just know it wasn't safe far as the ability to hold on to something, to get your hands physically on something, because there's no—there's no railing; there's no tie-off positions or anything on this—on these equipment—pieces of equipment.

\*　　\*　　\*　　\*　　\*　　\*

A. It needed—needed to be safer, and it's not safe as far as the operator is not protected completely in that cab, in that seat.

Q. What else should have been there to protect the operator?

A. They have—even small, like, mowers have rollover protection and have a—basically a cage or a cab setting above you to keep you from—when limbs—for limbs, for that—for that certain purpose, for limbs coming into—you know, when you run in—get close to limbs.

When asked why he was suing Terex, Whitmire replied:

A. Because of the safety factor of the truck. I felt like if it was safer—if it had hand holds where I could have got—hold on to, climb up on or actually physically held on to, I might not be—you know, I wouldn't be hurt. I wouldn't have hurt myself. I've been around this equipment a long time, and it's—you talk about this kind of stuff when you're working during the day, the process of things that aren't—you don't

think is right, this or that, especially if you're the one that's having to climb up and down or in or out of a piece of equipment. And climbing up and down that makes it pretty bad because there's no place to—you're at risk every time you climb up there to get in that seat to sit down.

According to Whitmire, a jury could reasonably infer from his testimony that additional handrails or an intermediate step would have permitted him to exit the operator's chair without falling and sustaining injuries. In addition, he alleges that a jury could reasonably conclude that the absence of additional shielding and/or additional railing and/or an intermediate step was a producing cause of his injuries. In support of his argument, Whitmire references Reichert's report, which states that the "[a]bsence of convenient, effective grab rails and an intermediate step clearly were producing causes of the personal injury suffered by Mr. Whitmire." Furthermore, Whitmire contends that Terex's contention that Whitmire was solely or contributorily negligent is a question of fact which should be submitted to the jury as part of a comparative fault analysis.

■ Based on the record currently before the court, the circumstances of this case appear to be consistent with either of the competing causal theories, as espoused by Terex and Whitmire. Terex argues that Whitmire's injuries would not have been prevented even if there were additional "grab-rails" and/or an intermediate step because the force of the tree limb pushed him out of his chair and onto the ground. Whitmire counters that, if he had been provided additional "grab-rails" or an intermediate step, he could have safely exited the chair without falling to the ground, discounting the notion that the tree limb knocked him directly to the ground. In this situation, because one factual scenario appears no more probable than the other, neither can be inferred definitively at this juncture. See Flock, 319 F.3d at 237. Nevertheless, because Whitmire, the nonmovant, has proffered evidence that the digger derrick lacked additional "grab-rails" and/or an intermediate step and that he lost his balance as a result, a factfinder could conclude that such design was defective and was a substantial factor in causing his injuries. See id. As a consequence, Whitmire has presented more than a scintilla of probative evidence raising crucial fact issues on various aspects of the challenged claim, thus precluding summary judgment on the design defect cause of action.

### D. Negligence

■ Whitmire also asserts that Terex breached its duty to design a safe product. Specifically, Whitmire states that Terex was "negligent in the design, manufacture, marketing and sale (including inadequate warnings and instruction) of the product in question, which was a proximate cause of the occurrence in question and Plaintiff's injuries and damages." Under Texas law, a negligence claim consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury. See Ford v. Cimarron Ins. Co., 230 F.3d 828, 830 (5th Cir.2000); Gutierrez v. Excel Corp., 106 F.3d 683, 687 (5th Cir.1997) (citing Skipper v. United States, 1 F.3d 349, 352 (5th Cir.1993), cert. denied, 510 U.S. 1178, 114 S.Ct. 1220, 127 L.Ed.2d 566 (1994)); Mellon Mortgage Co. v. Holder, 5 S.W.3d 654, 663 (Tex.1999); Thapar v. Zezulka, 994 S.W.2d 635, 637 (Tex.1999); Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex.1995).

### 1. *Duty*

■ The first inquiry addressed in all negligence cases is whether a duty was owed to the plaintiff by the defendant. *See Ford,* 230 F.3d at 830; *Rodriguez v. Sabatino,* 120 F.3d 589, 591–92 (5th Cir. 1997), *cert. denied,* 523 U.S. 1072, 118 S.Ct. 1511, 140 L.Ed.2d 665 (1998); *Crider v. United States,* 885 F.2d 294, 296 (5th Cir. 1989), *cert. denied,* 495 U.S. 956, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990); *Holder,* 5 S.W.3d at 663; *Thapar,* 994 S.W.2d at 638. "Whether a legal duty exists is a threshold question of law for the court to decide from the facts surrounding the occurrence in question." *Thapar,* 994 S.W.2d at 637 (citing *St. John v. Pope,* 901 S.W.2d 420, 424 (Tex.1995); *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994)); *see Ford,* 230 F.3d at 830. If the defendant owed no duty, it cannot be found liable for negligence. *See Thapar,* 994 S.W.2d at 637 (citing *Van Horn v. Chambers,* 970 S.W.2d 542, 544 (Tex.), *cert. denied,* 525 U.S. 1019, 119 S.Ct. 546, 142 L.Ed.2d 454 (1998); *St. John,* 901 S.W.2d at 424; *Graff v. Beard,* 858 S.W.2d 918, 919 (Tex.1993)). "A duty is a legally enforceable obligation to conform to a particular standard of conduct." *San Benito Bank & Trust Co. v. Landair Travels,* 31 S.W.3d 312, 317 (Tex.App.— Corpus Christi 2000, no pet.); *accord Rodriguez v. Moerbe,* 963 S.W.2d 808, 816 (Tex.App.—San Antonio 1998, no pet.). In assessing the existence of a duty, the court considers several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *See Edward D. Jones & Co. v. Fletcher,* 975 S.W.2d 539, 544 (Tex.1998); *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983); *Allen v. Albright,* 43 S.W.3d 643, 646 (Tex. App.—Texarkana 2001, no pet.). Of these

factors, foreseeability of the risk is the dominant consideration. *See Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987); *Amaya v. Potter,* 94 S.W.3d 856, 861 (Tex.App.—Eastland 2002, pet. denied); *Allen,* 43 S.W.3d at 646.

■ A seller's duty to design a safe product is an obligation imposed by law. *See Robins,* 982 S.W.2d at 161 (citing *Grinnell,* 951 S.W.2d at 432). Thus, Terex had a duty to design a digger derrick that is safe. "Whether a seller has breached this duty, that is, whether a product is unreasonably dangerous, is a question of fact for the jury." *Forrest v. Vital Earth Res.,* 120 S.W.3d 480, 490 (Tex.App.—Texarkana 2003, pet. denied). Having established that Terex owed Whitmire a legal duty to design a safe product, the issue of causation must be addressed.

### 2. *Proximate Cause*

Terex asserts that Whitmire cannot recover on his negligence claim because he fails to establish that the lack of "grabrails" or an intermediate step was a proximate cause of the accident or his damages. Terex states that in order for Whitmire to recover, he "must show not only that such acts and omissions were a cause-in-fact of the accident and damages, a burden which it has been shown he cannot meet, but also that the accident was reasonably foreseeable." Terex argues that Whitmire has no evidence that it was reasonably foreseeable to Terex that Whitmire and his fellow workers "would abandon common sense and violate basic safety rules and that the digger derrick would be backed into a tree knocking Mr. Whitmire out of the operator's chair."

■ In Texas, negligence requires a showing of proximate cause. *See Union*

*Pump Co.*, 898 S.W.2d at 775; *Bowser Bouldin, Ltd.*, 896 S.W.2d at 181–82; *see also Odell*, 948 S.W.2d at 935. Proximate cause includes two elements—cause in fact and foreseeability. *See Gutierrez*, 106 F.3d at 687; *McClure v. Allied Stores*, 608 S.W.2d 901, 903 (Tex.1980); *Forrest*, 120 S.W.3d at 490; *Rodriguez*, 963 S.W.2d at 818. "Cause in fact is 'but for cause,' meaning the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred." *Gutierrez*, 106 F.3d at 687 (citing *Poole*, 732 S.W.2d at 313); *accord City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994); *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex.1988). "Cause in fact is not shown if the defendant's negligence did no more than furnish a condition that made the injury possible." *Rodriguez*, 963 S.W.2d at 818 (citing *Union Pump Co.*, 898 S.W.2d at 776).

▮▮▮▮ "Foreseeability means that a person of ordinary intelligence should have anticipated the dangers that his negligence created." *Gutierrez*, 106 F.3d at 687; *see Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992); *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985). It also requires "that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." *Rodriguez*, 963 S.W.2d at 818 (citing *Texas Cities Gas Co. v. Dickens*, 140 Tex. 433, 168 S.W.2d 208, 212 (1943)). Foreseeability does not permit recollecting events and theorizing an extraordinary scenario where defendant's actions caused the injury. *See Forrest*, 120 S.W.3d at 490 (citing *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 737 (Tex. 1998)). Instead, the question " 'involves a practical inquiry based on "common experience applied to human conduct." ' " *Id.*

(quoting *Read*, 990 S.W.2d at 737 (quoting *City of Gladewater v. Pike*, 727 S.W.2d 514, 518 (Tex.1987))); *see Travis*, 830 S.W.2d at 98. Only the general danger, not the specific series of events that produced the harm is required to establish foreseeability. *See Forrest*, 120 S.W.3d at 490 (citing *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996)).

▮▮▮▮ Proximate cause is usually a mixed question of law and fact for the jury to determine. *See Cherry v. Texas Dep't of Crim. Justice*, 978 S.W.2d 240, 243 (Tex. App.—Texarkana 1998, no pet.) (citing *Poole*, 732 S.W.2d at 314); *see also Forrest*, 120 S.W.3d at 490; *United Way of San Antonio, Inc. v. Helping Hands Lifeline Found., Inc.*, 949 S.W.2d 707, 720 (Tex.App.—San Antonio 1997, writ denied). "Because proximate causation is inherently a factual issue, and because it is a contested issue in most negligence cases, it has been said that summary judgment procedure is not well adapted to the disposition of negligence cases." *Hennessy v. Estate of Perez*, 725 S.W.2d 507, 509 (Tex. App.—Houston [1st Dist.] 1987, no writ). Nonetheless, proximate cause may be a question of law where the facts are conclusive. *See Odell*, 948 S.W.2d at 935. A plaintiff must establish proximate cause by probative evidence, not mere conjecture. *See Gutierrez*, 106 F.3d at 687. "Proximate cause, however, like any other ultimate fact issue, may be established by circumstantial evidence." *Forrest*, 120 S.W.3d at 490. In some circumstances, "a defendant may be entitled to summary judgment based on causation when the defendant's conduct is 'too remotely connected with the plaintiff's injury to constitute legal causation.' " *Id.* at 781–82 (quoting *Union Pump Co.*, 898 S.W.2d at 775). "A lack of proximate cause may be established as a matter of law where the circumstances are such that reasonable

---

minds could not arrive at a different conclusion." *Cherry*, 978 S.W.2d at 243; *see Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Ely v. General Motors Corp.*, 927 S.W.2d 774, 781 (Tex.App.—Texarkana 1996, writ denied).

With respect to the cause-in-fact element, Whitmire's deposition testimony creates an issue of fact as to whether Terex's failure to provide "grab-rails" and/or an intermediate step was a substantial factor in bringing about Whitmire's injuries and without which no harm would have occurred. According to Whitmire, had there been additional handrails or "grab-rails" and/or an intermediate step, he could have kept his balance and been able to exit the chair safely after being hit by the tree limb. Thus, Whitmire adduces sufficient evidence to satisfy the cause-in-fact element of proximate cause.

Moreover, Whitmire presents sufficient evidence to establish the foreseeability element of proximate cause. In light of the testimony proffered by Whitmire, a person of ordinary intelligence could have anticipated the danger created by Terex's failure to provide "grab-rails" and/or an intermediate step on the equipment in question. *See Green v. City of Friendswood*, 22 S.W.3d 588, 595 (Tex.App.—Houston [14th Dist.] 2000, pet. denied). Considering Whitmire's line of work in operating a digger derrick outside on city streets, his injury " 'might reasonably have been contemplated' " as a result of Terex's conduct. *See id.* Foreseeability requires only that the general danger, not the specific series of events that produced the harm, be foreseeable. *See Forrest*, 120 S.W.3d at 491. It is apparent that a person working outdoors, seated in the operator's chair of a digger derrick, amidst utility poles, electrical lines, trees, and mother nature, might be susceptible to general danger, including exposure to bees, animals, unruly people, inclement weather, tree limbs, and other conditions that occur outdoors. Thus, based on common experience and human conduct, a factfinder could reasonably anticipate that, under those circumstances, a worker might need to descend quickly from the chair to avoid an accident. In this situation, such scenario is more than a theory of an extraordinary sequence of events where defendant's conduct brings about the injury. *See id.* As a result, Whitmire has provided sufficient evidence to raise a fact issue as to whether his injuries were a foreseeable consequence of Terex's failure to provide additional "grab-rails" and/or an intermediate step by which he could have exited the equipment safely.

Construing the evidence in the light most favorable to the non-moving party, reasonable persons could differ in their conclusions. *See id.* Here, Whitmire's testimony, when combined with the experts' affidavits and professional literature, has created critical fact issues as to whether Terex breached its duty to provide a safe product and whether such breach proximately caused Whitmire's injuries. Therefore, with regard to Whitmire's negligence claim, summary judgment is not warranted.

## III. *Conclusion*

Under these circumstances, Whitmire has presented sufficient evidence to raise material issues of fact as to whether the digger derrick, manufactured by Terex, was defectively designed and unreasonably dangerous, and thereby constituted a producing cause of Whitmire's injuries. Whitmire has also adduced adequate evidence to create a fact issue as to whether Terex was negligent in the design of the digger derrick and whether such negligence was a proximate cause of Whitmire's injuries.

Accordingly, Terex's motion for summary judgment is granted in part and denied in part. Whitmire has abandoned his claims asserting manufacturing and marketing defects as well as breach of express and/or implied warranties of safety, rendering summary judgment appropriate as to those claims. Whitmire, however, may proceed to trial against Terex on his claims of strict products liability and negligence stemming from the design of the digger derrick.

## PARTIAL SUMMARY JUDGMENT

In accordance with the court's Memorandum and Order dated May 5, 2005, summary judgment is rendered in favor of Defendant Terex Telelect, Inc., with respect to Plaintiff Raymond W. Whitmire, Sr.'s, manufacturing and marketing defect claims and his breach of express and/or implied warranties of safety claims.